UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOS L. DINKINS,

Plaintiff,

-against-

THE STATE OF NEW YORK, et al.,

Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-08447 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Plaintiff Nicos L. Dinkins ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, brings a claim under 42 U.S.C. § 1983 against Jouliana Petranker ("Defendant") for deliberate indifference to his medical needs while incarcerated at the Rockland County Correctional Facility ("Jail") in New City, New York. (Doc. 2, "Compl.").[1] Defendant filed her Answer on December 16, 2019. (Doc. 17).[2] Approximately two months later, on February 13, 2020, Defendant moved for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, summary judgment under Federal Rule of Civil Procedure 56(a). (Doc. 21; Doc. 25, "Def. Br.").[3] By notice of motion dated May 4, 2020 and filed on July 1, 2020, Plaintiff filed what the Court construes as a cross-motion for an order "accepting [his] complaint" under Rule 12(c) "or

---

[1] Plaintiff used the template complaint available on the Court's website to draft the Complaint. For ease of reference, citations to the Complaint correspond to the page numbers assigned by ECF.

[2] All other Defendants, except Ramapo Police Officer Michael Samora, were dismissed from this action by Judge Seibel on September 23, 2019. (Doc. 6). Officer Samora filed his Answer on December 12, 2019 (Doc. 13) and proceeded into discovery.

[3] Defendant submitted four Exhibits in support of her motion. Attached to Defense Counsel's Declaration were: (1) the Complaint (Doc. 24-1, Weissman Decl. Ex. A); and (2) Defendant's Answer (Doc. 24-2, Weissman Decl. Ex. B). Attached to the Declaration of Lieutenant John Byron ("Lt. Byron Decl.") were: (1) the Rockland County Jail Inmate Rules and Regulations ("Jail Handbook") with Plaintiff's signed acknowledgment form (Doc. 23-1, Byron Decl. Ex. A ("Jail Regs.")); and (2) documents pertaining to Grievance No. 19-04, the grievance filed against Defendant in January 2019 (Doc. 23-2, Byron Decl. Ex. B ("Grievance Docs.")). References to these Exhibits correspond to the page numbers assigned by ECF.

alternatively deny[ing] . . . summary judgement pursuant to Rule 56 of the F.R.C.P." (Doc. 33, "Pl. Br." at 1-2).[4] Defendant's reply in further support of her motion was filed on May 27, 2020. (Doc. 31, "Def. Reply").

For the reasons set forth below, Defendant's motion for summary judgment pursuant to Rule 56(a) is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.[5]

---

[4] Plaintiff filed three Exhibits in support of his cross-motion: (1) his medical records (Pl. Br. at 15-29, Ex. A ("Med. Rec.")); (2) a form reflecting an appeal of Grievance No. 19-04 (Pl. Br. at 30-31, Ex. B ("Grievance App.")); and (3) documents pertaining to Grievance No. 2020-35 (Pl. Br. at 32-36, Ex. C ("No. 2020-35")). As Plaintiff's submissions have been filed as a single docket entry (Doc. 33), citations to the items reference the specific document and correspond to the page numbers generated by ECF. For example, a citation to the medical records will read "Med. Rec. at __" whereas a citation to the notice of motion or substantive arguments in the brief will read "Pl. Br. at __."

[5] The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(c) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). To do this, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. Both parties have filed evidence in support of their motions that was unattached to the pleadings, and neither offers any explanation as to how these items may be considered on a Rule 12(c) motion. (*See* Def. Br.; Pl. Br.; Def. Reply). As the Court does not exclude the documents, and because each party has alternatively moved for summary judgment pursuant to Rule 56, the Court rules on the parties' motions for summary judgment. There is no doubt that Plaintiff was aware that the Court could resolve the pending motion under Rule 56. First, Defendant moved for relief under Rule 56 in the alternative, and Plaintiff responded by cross-moving under that provision. (*Compare* Doc. 21, *with* Pl. Br. at 2). Second, Plaintiff submitted three documents in support of his filing and "ask[ed] the Court to review the affidavit and all other document[s] brought forth in support of his claim pursuant to 56(c) of the Federal Rules of Civil Procedure." (Pl. Br. at 4). Third, Defendant provided Plaintiff with the Notice required under Local Civil Rule 12.1 of the U.S. District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules"), which warned Plaintiff "that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." (Doc. 22 at 1); *see Redman v. New York State Dep't of Corr. Servs.*, 541 F. App'x 52, 53 (2d Cir. 2013) (affirming summary judgment and noting that "[d]efendants' Local Rule 12.1 statement put [plaintiff] on notice that the motion might be converted into one of summary judgment . . . ."). Even if the Court considered the motion pursuant to Rule 12(c), the Court would grant the motion, as such a motion is "appropriate where the movant has established 'that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *28th Highline Assocs., L.L.C. v. Roache*, --- F. App'x ---, 2020 WL 5523497, at *1 (2d Cir. Sept. 15, 2020) (quoting *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (alteration in original)). The documents, in that vein, are integral to Plaintiff's complaint or relied upon by Plaintiff and, as such, could have been considered.

# BACKGROUND

On November 27, 2018, Plaintiff was arrested after giving a false name to, and attempting to flee from, a police officer.[6] (Compl. at 7-8). After being subdued by the arresting officer, Plaintiff was brought to the Jail where he "notified the Medical Staff about the inflammation in [his] knee." (*Id.* at 8). Plaintiff complained that his "knee pop[ped] out then pop[ped] back into place." (*Id.*). Plaintiff maintains that he is "incapable of performing any dynamic movements without [his] knee dislocating and . . . crashing down to the floor." (*Id.*).

I.   Medical Care Provided to Plaintiff[7]

Plaintiff's knee complaint was first addressed on November 27, 2018. (Med. Rec. at 23-29). On that day, Plaintiff was evaluated at the Good Samaritan Hospital Emergency Department, where he was diagnosed with a "strain" and prescribed "motrin." (*Id.* at 27-28). An x-ray performed that day was "unremarkable" and revealed "[n]o definite fracture, dislocation or bony destruction . . . ." (*Id.* at 29). Following an examination later that same day by nursing staff at the Jail, staff contacted "good sam hospital to get x-ray report of [Plaintiff's] left knee, [and] according

---

[6] Plaintiff represents that he lied to the arresting officer because, in part, he "was on the run." (Compl. at 8). Presumably, Plaintiff was "on the run" because he had violated his parole. (*See id.* at 7) (admitting that while Plaintiff was asked to "re-report to parole because [his] parole officer . . . forgot to have [him] sign some papers," he "refused" to do so).

[7] Most of the information referenced herein is taken from the medical records Plaintiff submitted in support of his cross-motion for summary judgment. (*See generally* Med. Rec.). While the Court is mindful that Plaintiff alleges one note is incomplete (Pl. Br. at 7-8), the Court may consider these documents because Defendant does not dispute their authenticity and Plaintiff relies upon them. *See Nunez v. Donahue*, No. 12-CV-1071, 2015 WL 13744630, at *1 (N.D.N.Y. Nov. 23, 2015) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party." (internal quotation marks omitted)); *Goris v. Breslin*, No. 04-CV-5666, 2010 WL 376626, at *1 n.1 (E.D.N.Y. Jan. 26, 2010) (considering "medical records because the plaintiff relies on the records in support of his claims and in opposition to the motion for summary judgment").

to good sam ER staff [Plaintiff] had x-ray of left knee it is negative, report will be available tomorrow . . . ." (*Id*. at 23-24).

On January 22, 2019, Plaintiff saw Dr. Richard Semble, an orthopedist, about his knee. (*Id*. at 22-23). Notes from that examination reflect that Plaintiff had "no swelling, positive Lachman, no joint line tenderness, no instability to valgus or varus stress. 0-140 deg motion with normal extensor strength. Rule out ACL tear left knee. Plan MRI left knee to assess for internal derangement." (*Id*. at 23). It was during this interaction that Plaintiff complains Defendant ignored the referral for an MRI and "ordered [Plaintiff] a soft brace" instead because "they only ha[d] to maintain [his] knee . . . ." (Compl. at 8). Plaintiff "was escorted back his cell" after becoming "disruptive." (Med. Rec. at 22). Approximately one month later, on February 26, 2019, Dr. Semble reexamined Plaintiff. (*Id*.). The notes from that day advise that Plaintiff's

> symptoms are unchanged from a month ago with the sense of the knee popping and giving out with lateral movement. The pain is not the issue and stair climbing is fine.
>
> Pe 0-140 deg motion, normal extensor strength, no collateral tenderness, negative McMurrays[.] Imp rule out tear medial meniscus vs ACL tear. Will need MRI to make diagnosis.

(*Id*.). Plaintiff was examined again on March 10, 2019, this time by Dr. Dominick Piacente. (*Id*. at 21). Dr. Piacente found Plaintiff's knee swollen, ordered pain medication, and directed that Plaintiff be revaluated in three days. (*Id*.). Notes submitted by Dr. Steven Pappas indicate that a knee brace was first ordered on March 13, 2019. (*Id*.).

During the follow-up examination on March 14, 2019, Plaintiff "stated his pain is [a] little better." (*Id*.). Two days later, Dr. Pappas reviewed the x-ray from Good Samaritan Hospital and concluded "[n]o definitive x-ray evidence of fx." (*Id*.). On March 18, 2019, Plaintiff was informed that he had been referred to physical therapy and Defendant gave Plaintiff his knee brace. (*Id*.). On

March 26, 2019, Plaintiff was examined by Dr. Andrew Pereira, a physical therapist. (*Id*. at 20-21). During that encounter, Plaintiff "state[d] that he is able to walk normally, but unable to engage in more dynamic activities." (*Id*. at 21). Dr. Pereira recorded that the injury did "did not impede [Plaintiff's] ability to perform ADLs/amb," and he "[s]uggested a compressive neoprene brace should the knee continue to cause discomfort." (*Id*.). Dr. Piacente examined Plaintiff again on April 4, 2019 and determined that Plaintiff "need[ed] to continue knee brace until release" and scheduled a follow-up in six weeks. (*Id*. at 20).

During the follow-up examination on May 17, 2019, Plaintiff claimed that he could not "do any activities with out [sic] the brace" and Plaintiff was directed "to follow up with medical after [six] weeks." (*Id*.). On June 17, 2019, Plaintiff complained to Dr. Piacente that "his knee clicks when he wears his knee brace when he sleeps;" Dr. Piacente advised that Plaintiff not wear the brace when he sleeps. (*Id*.). On July 2, 2019, Dr. Piacente entered a note concluding that Plaintiff's need for the brace did not need to be revaluated and directing that Plaintiff use the brace "during his entire period of incarceration." (*Id*.).

On August 6, 2019, Plaintiff saw Dr. Kalpana Parghi. (*Id*. at 19). During that visit, Dr. Parghi found that Plaintiff's knee "appear[ed] normal, gailt [sic] and weight bearing [were] normal . . . ." (*Id*.). Although Plaintiff had "been seen by orthopedist and PT before," Dr. Parghi referred Plaintiff to Dr. Semble. (*Id*.). Dr. Semble's notes indicate that "[t]here is no complaint of pain so long as [Plaintiff] does not do any pivoting or planting activities." (*Id*.). Plaintiff had a "full range of motion," and Dr. Semble suggested "knee extension exercises," and advised that Plaintiff "avoid any pivoting activities." (*Id*. at 19-20). Plaintiff claims that this note is incomplete because Dr. Semble again recommended "an MRI.," but it is not included. (Pl. Br. at 7-8).

5

Thereafter, on September 9, 2019, Defendant gave Plaintiff a new knee brace, and he was seen by Dr. Pereira on October 15, 2019. (Med. Rec. at 19). Notes from October 15, 2019 reflect that Plaintiff "report[ed] his knee pain persists, wearing a brace for improved stability, state[d] still having trouble with pivoting and feels unsteady without the brace." (*Id*.). On December 24, 2019—the date of the last entry concerning knee pain reflected in the records Plaintiff submitted—Plaintiff saw Dr. Semble again. (*Id*. at 16). The note from that encounter reads, in pertinent part:

> [N]otes 13 months of recurrent instability to the left knee after being arrested. Wears brace which does prevent the dislocations but feels with lateral movement the patella will dislocate. With dislocations the knee swells.
>
> . . . .
>
> Is using brace (without metal) and cinching it up tight but feels that the brace slides. He feels that if he plays basketball or runs the patella feels unstable. He currently does not feel unstable and is not wearing the brace to the exam.
>
> PE no swelling, negative patella apprehension, 0-140 deg motion with normal extension strength, no valgus or varus instability and no tenderness over the medial patellofemoral ligament[.]
>
> Imp Recurrent patella instability by history[.]
>
> Plan Bracing and avoiding twisting and pivoting activities. If the symptoms here become unmanageable then surgical consideration of patella realignment surgery on an elective basis. Diagnostic studies will not add any information or change the recommendations[.]

(*Id*.). Plaintiff claims that he was never "properly treated" or diagnosed, and that the "unknown injury" to his knee continues to cause him pain. (Pl. Br. at 7). Plaintiff claims that Defendant, for her part, did "everything in her power to down play [sic] the plaintiff's knee problems." (*Id*.).

II.   <u>Plaintiff's Grievances</u>[8]

Shortly after Plaintiff's encounter with Defendant on January 22, 2019, Plaintiff sought to file a grievance about their interaction. In Plaintiff's first attempt, dated January 26, 2019 and received by staff on January 28, 2019, Plaintiff wrote that he wanted Defendant to "be reprimanded" and "retrained on how to carry herself in a professional manor [sic] . . . ." (Grievance Docs. at 4). The top portion of that document, which asks Plaintiff for a description of facts, is crossed out. (*Id.*). On January 29, 2019, Lt. John Byron, Grievance Coordinator at the Jail, returned the grievance to Plaintiff "due to the grievance not being completed properly." (*Id.* at 6). Lt. Byron explained that the "form is crossed out in the section 'Brief Description of the Grievance.' You can attach additional paper to grievance listing you[r] grievance but list this on the grievance form." (*Id.*). Lt. Byron noted also that "[i]f assistance is required to complete the grievance form properly the grievant can request the grievance coordinator to ensure that the grievant is assisted in the preparation of the written grievance." (*Id.*). Plaintiff avers that when the grievance was returned, he "asked for assistance from a coordinator" who "misle[]d" and "told him specifically that the grievance must be about the altercation" with Defendant and not his medical care. (Pl Br. at 7; *see also id.* at 10).

Plaintiff resubmitted his grievance and attached a sheet describing the facts of his complaint as follows:

> While I was speaking to the orthopedic about my knee HSA Joulianna rudely interrupted the conversation that I was having with the orthopedic. This is an ongoing problem with her

---

[8] The information referenced herein relies upon Lt. Byron's Declaration and the documents provided by both Plaintiff and Defendant. (*See* Grievance Docs.; Grievance App.). Plaintiff claims that the record submitted by Defendant indicating that Plaintiff did not appeal (Grievance Docs. at 2) is "bogus" (Pl. Br. at 10). Plaintiff does not challenge the contents of Grievance No. 19-04 in the first instance, so whether he filed a timely appeal has no bearing on the Court's analysis. As such, the Court considers the documents to the extent they are undisputed. *See Nunez*, 2015 WL 13744630, at *1; *Goris*, 2010 WL 376626, at *1 n.1.

> unprofessionalism in this office. She seems to always talk to me
> disrespectful[ly] and as if I'm not a human. It's to the point where
> I'm prett[y] sure that she is antagonizing me. . . . She came off as if
> I was trying to fil[e] a law suit [sic] against the jail. And the end
> result of her actions has me feeling like my medical needs will not
> be met. I'm sick and tired of having to deal with her disgusting
> attitude everytime [sic] I attend medical. And as I stated already I
> refuse to be antagonized also while attending medical.

(Grievance Docs. at 7). Plaintiff reiterated his request that Defendant be "reprimanded" and "retrained." (*Id*. at 2). On January 31, 2019, Lt. Byron concluded that employee discipline was "considered a private matter," found the grievance unsubstantiated, and denied the action requested. (*Id*. at 5, 9). The determination on the grievance was issued to Plaintiff on February 1, 2019. (*Id*. at 2).

The records provided by Defendant indicate that Plaintiff did not appeal the January 31, 2019 determination. (*Id*.). Plaintiff, in contrast, insists that he did appeal and never received a response. (Pl. Br. at 10; Grievance App. at 31). Plaintiff says that his "grievance was never returned to him after he appealed it." (Pl. Br. at 12).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). A court's duty in determining

whether summary judgment is appropriate is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial and cannot defeat a motion for summary judgment." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). The claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)). Should there be no genuine issue of material fact, the movant must also establish its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020)

(quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-7186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). This status, however, does not excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-4837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Ross v. Koenigsmann*, No. 14-CV-1321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017) (explaining that, even for a *pro se* party, "mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment"). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-2630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020).

As the summary judgment standard applies equally to claims for relief and affirmative defenses, *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) ("The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ."), the Court will turn, therefore, to the dispositive affirmative defense of failure to exhaust administrative remedies before considering Plaintiff's claim of relief for deliberate indifference.

## ANALYSIS

I.   The Affirmative Defense of Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Accordingly, the Court looks to the process available to Plaintiff at the Jail.[9]

---

[9] The "failure to exhaust administrative remedies in compliance with the PLRA is an affirmative defense" and it "may be waived" by a defendant that fails to raise it. *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 693 n.3 (S.D.N.Y. 2016) (internal quotation marks omitted). Here, Defendant's Second Affirmative Defense was failure to comply with 42 U.S.C. § 1997e. (Doc. 24-2 at 2).

The Jail Handbook outlines the grievance procedure in place at the Jail. (*See* Jail Regs. at 21-22). Before filing a formal grievance, inmates must "attempt to resolve the issue with [their] Housing Unit Officer, or the Officer assigned to that detail." (*Id*. at 21). If the complaint cannot be resolved at that level, the issue is elevated to the "area Sergeant" and thereafter, if unresolved, to the "Shift Lieutenant." (*Id*.). If the complaint cannot be resolved through this process, the inmate "will be issued" a "Formal Grievance form." (*Id*.). In the formal process, "Formal Grievances must be filed within five days of the date of the act or occurrence-giving rise to the grievance." (*Id*. at 22). After submitting the form, the "grievance will be investigated and [the grievant] will receive a written determination from the Grievance Coordinator with-in [sic] five (5) business days." (*Id*.) If the individual wishes to challenge the Grievance Coordinator's determination, he or she "may appeal thedetermination [sic] in writing to the Chief Administrative Officer of the Facility with-in [sic] two (2) business days" and a response will be then provided "with-in [sic] five (5) business days." (*Id*.) If the inmate wishes to appeal the decision rendered by the Chief Administrative Officer to the New York State Commission of Corrections ("NYS CROC"), then he must do so within "three (3) business days." (*Id*.) The NYS CROC "will issue a written determination to the appeal with-in [sic] 45 business days" of receiving the appeal. (*Id*.)

Plaintiff filed a Formal Grievance about Defendant on January 30, 2019 and received a response on February 1, 2019. According to Lt. Byron, and undisputed by Plaintiff, Grievance No. 19-04 is the only grievance Plaintiff filed about any interaction with Defendant. (Doc. 23, Byron Decl. ¶ 3). The grievance does not concern the medical care provided, but rather, takes issue with Defendant's demeanor and seeks disciplinary action against her for that reason. (*See* Grievance Docs. at 2, 7). While Plaintiff insists that "any layperson would easily be able to . . . [see that] he was reaching out for help on a medical level" (Pl. Br. at 10), the Court disagrees. A "grievant need

not lay out the facts, articulate legal theories, or demand particular relief," as administrative grievances are comparable to a "notice pleading system." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). However, a grievance must "object intelligibly to some asserted shortcoming" and "provide enough information about the conduct of which [a grievant] complain[s] to allow prison officials to take appropriate responsive measures." *Id.* (internal quotation marks omitted). Here, Plaintiff protested that Defendant "interrupted" his conversation with "the orthopedic" and took issue with Defendant's attitude. (Grievance Docs. at 7). While Plaintiff complained that Defendant's attitude made him "feel[] like [his] medical needs will not be met" (*id.*), Plaintiff made clear that he wanted Defendant reprimanded and retrained to "carry herself in a professional manor [sic]" and did not suggest he was not receiving proper medical care (*id.* at 2). Bearing in mind that the "grievance pleading standard" is "liberal," *Brownell*, 446 F.3d at 310, the Court concludes Grievance No. 19-04 did not put officials on notice that Plaintiff was grieving the medical care received. *See Harriott v. Annucci*, No.15-CV-6135, 2019 WL 5291004, at *4-5 (W.D.N.Y. Oct. 18, 2019) (inmate's complaint that bunkmate was a smoker did not put officials on notice that bunkmate smoked inside the cell and in the recreation yard). Consequently, as Plaintiff never filed a grievance that would put officials on notice that he took issue with the adequacy of medical care provided, he did not exhaust administrative remedies in accordance with the PLRA, and the action must be dismissed.

Plaintiff contends that he should be excused from any failure to grieve the provision of medical care because he *wanted* to do so but was misled by an unidentified grievance coordinator who told him not to grieve the adequacy of medical care provided. (*See* Pl. Br. at 6-7, 10, 12). The Supreme Court has recognized that an administrative remedy is functionally unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1860. However, Plaintiff's allegation that an unidentified official lied to him, without more, is insufficient to raise a genuine issue of material fact. Here, Lt. Byron, the Jail's Grievance Coordinator, informed Plaintiff that he could seek assistance from "*the* grievance coordinator" to ensure Grievance No. 2019-04 was completed properly (Grievance Docs. at 6 (emphasis added)), and Plaintiff maintains that he sought "assistance from *a* coordinator" who lied to him (Pl. Br. at 7 (emphasis added)). While the Court is mindful of the special leniency granted *pro se* litigants, the conclusory claim that an unidentified official misled Plaintiff, without more, is not enough to raise a genuine dispute of material fact and defeat Defendant's motion for summary judgment. *See Hill v. Tisch*, No. 02-CV-3901, 2009 WL 3698380, at *4 (E.D.N.Y. Oct. 30, 2009) (*pro se* plaintiff's claims that somebody told him he could not grieve certain issues was "devoid of any specificity" and "insufficient to withstand summary judgment"). If the Court were to conclude otherwise, any person subject to the PLRA's exhaustion requirements could defeat summary judgment on the conclusory claim that some unidentified official misled them.

II.    <u>Plaintiff's Claim for Deliberate Indifference to His Serious Medical Needs</u>

Alternatively, and assuming *arguendo* that Plaintiff exhausted his administrative remedies properly before pursuing this action, Defendant nevertheless would secure summary judgment as to Plaintiff's claim for relief of deliberate indifference to his serious medical needs. Plaintiff alleges that Defendant was deliberately indifferent by failing to properly diagnose and treat his recurring knee problem with surgery and/or an MRI. (*See* Compl. at 8; Pl. Br. at 6-8, 12-13). Defendant seeks summary judgment because she was not deliberately indifferent to Plaintiff's medical needs. (Def. Br. at 4-8; Def. Reply at 4-9). As the Court finds that there is no genuine issue of material fact regarding whether Plaintiff can satisfy either the objective or subject prongs

of his Fourteenth Amendment deliberate indifference claim, the Court concludes that Defendant is entitled to judgment as a matter of law.

On January 22, 2019, Plaintiff was a pretrial detainee. (Compl. at 2).[10] "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than . . . the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). An official may be found liable for violating a pretrial detainees' due process rights "if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Boomer v. Lanigan*, No. 00-CV-5540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)); *see also Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (holding that, to prevail on a Fourteenth Amendment deliberate indifference claim, a plaintiff must prove "(1) that the alleged deprivation [of medical treatment] 'pose[d] an unreasonable risk of serious damage to his health,' and (2) 'that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed.'" (quoting *Darnell*, 849 F.3d at 30, 35) (second alteration in original)). Thus, to prevail on a Fourteenth Amendment claim alleging inadequate medical care, a plaintiff must prove an objective prong and a subjective prong.

---

[10] Plaintiff alleged in the Complaint that he was a pretrial detainee at the time he filed the action. (Compl. at 2). Defendant's arguments, based on the Fourteenth Amendment, assume that Plaintiff was a pretrial detainee at the time of the events in question and Plaintiff does not dispute this point. (*Compare* Def. Br. at 5, *with* Pl. Br.). While the standards under the Eighth and Fourteenth Amendments are substantially similar, the evidence required to substantiate the second prong of a deliberate indifference claim under the Fourteenth Amendment is "less than the proof required under the Eighth Amendment." *Sutton v. Rodriguez*, No. 18-CV-1042, 2020 WL 5504312, at *4 n.3 (S.D.N.Y. Sept. 8, 2020). Accordingly, while it is unclear, the Court conducts its analysis under the Fourteenth Amendment regime, which is more favorable to Plaintiff, and notes that failure to make a claim out under the Fourteenth Amendment would necessarily defeat a claim under the Eighth Amendment.

As to the objective prong, a plaintiff must demonstrate that "the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 280. "If the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). While there is no "precise metric" to determine whether a prisoner's medical needs are sufficiently serious, the Second Circuit's standard "contemplates a condition of urgency that may result in degeneration or extreme pain." *Bellotto*, 248 F. App'x at 234 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The Court, when determining whether a condition is sufficiently serious, "considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain." *Chavis v. vonHagn*, No. 02-CV-119, 2009 WL 236060, at *43 (W.D.N.Y. Jan. 30, 2009) (citing *Chance*, 143 F.3d at 702). If, alternatively, a plaintiff alleges that "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. If, for example, "the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Carpenter*, 316 F.3d at 185 (alteration in original)).

Plaintiff alleges that his "knee pops out then pops back into place," that he is "uncapable of performing any dynamic movements without [his] knee dislocating and [him] crashing down to the floor," and that he did not receive proper care for his ongoing knee problem. (Compl. at 8; Pl. Br. at 7-8, 12-13). Plaintiff alleges that Defendant stood in the way of proper treatment and provided "a band-aid" solution (Pl. Br. at 12), and filed his medical records for the purpose of

establishing that he had "ongoing difficulties" with his knee (*see generally* Med. Rec.). As such, the objective prong's seriousness inquiry focuses both on the seriousness of Plaintiff's knee problem *and* the lack of treatment provided.

On the issue of seriousness of his medical condition, there is no genuine dispute as to the material fact that Plaintiff's knee problem did not constitute a serious medical condition under the Fourteenth Amendment. Upon review of the medical records submitted by Plaintiff, he told medical providers that: (1) "his pain [was a] little better" on March 14, 2019; (2) "he is able to walk normally" on March 26, 2019; and (3) the brace prevented dislocations, but he felt "unstable" when "he plays basketball or runs" on December 24, 2019. (*Id*. at 16, 21). Those records also reflect observations from medical providers that: (1) "pain is not the issue and stair climbing is fine" on February 26, 2019; (2) the injury "did not impede [Plaintiff's] ability to perform ADLs/amb" on March 26, 2019; and (3) the knee "appear[ed] normal, gailt [sic] and weight bearing [were] normal" and "[t]here is no complaint of pain so long as [Plaintiff] does not do any pivoting or planting activities" on August 6, 2019. (*Id*. at 19, 21-22).

The fact that Plaintiff admitted that he could "walk normally," that the brace prevented dislocations, and that he experienced discomfort when "he plays basketball or runs," defeats the claim that the knee pain was "a condition of urgency" that could have caused "degeneration or extreme pain." Indeed, "[c]ourts in this circuit . . . have often considered knee injuries and have consistently found that such injuries are insufficient to support a § 1983 claim based on deliberate indifference . . . ." *Taylor v. Kurtz*, No. 00-CV-700, 2004 WL 2414847, at *4 (W.D.N.Y. Oct. 28, 2004) (granting summary judgment to defendants on *pro se* inmate's Eighth Amendment deliberate indifference claim); *see also Harvey v. Palmer*, No. 15-CV-853, 2017 WL 3891694, at *2 (N.D.N.Y. Sept. 6, 2017) (explaining that plaintiff's "knee pain do[es] not constitute a

sufficiently serious condition"); *Martin v. Niagara Cty. Jail*, No. 05-CV-868, 2012 WL 3230435, at *9 (W.D.N.Y. Aug. 6, 2012) (concluding that "knee pain [is] not sufficiently serious to cause death, degeneration, or extreme pain"). As Plaintiff has not produced any admissible evidence to create a genuine dispute of material fact contradicting the records he submitted, he has failed to counter Defendant's motion on this issue.[11] In short, Plaintiff does not have a "serious medical need."

On the question of the adequacy of treatment, while Plaintiff was seen by medical personnel regarding his knee no less than fourteen separate times (*see* Med. Rec. at 16-29), he complains that he should have received an MRI that was recommended three times by Dr. Semble, and the elective surgery Dr. Semble referenced in his last note. (Compl. at 8; Pl. Br. at 7-8, 12; Med. Rec. at 22-23). Neither of these "inadequacies" is actionable. Refusing an MRI—assuming such authority was vested in Defendant[12]—is a "matter[] for medical judgment and constitute[s], at most, malpractice that is not actionable pursuant to Section 1983." *Washington v. The City of New York*, No. 10-CV-389, 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) (failure to provide a recommended CAT scan); *see also Henrius v. Cty. of Nassau*, No. 13-CV-1192, 2015 WL 5542464, at *17 (E.D.N.Y. Sept. 16, 2015) (refusing a recommended MRI, without more, does not satisfy the objective prong). In a similar fashion, Plaintiff's demand that he "should have been referred for surgery is merely a difference of opinion with respect to a course of treatment, which is not actionable under section 1983." *Ruiz v. Homerighouse*, No. 01-CV-0266, 2003 WL

---

[11] That is not to say that knee pain could never constitute a sufficiently serious medical condition; however, establishing such a condition would involve facts not present here. *See Poole v. Armor Corr. Health Servs.*, No. 15-CV-2927, 2016 WL 1089350, at *5 (E.D.N.Y. Mar. 21, 2016).

[12] Notably, Defendant did not argue that she was not the decisionmaker with respect to Plaintiff's treatment until her reply brief. (*Compare* Def. Br. at 4-8, *with* Def. Reply at 8-9). As the argument was made for the first time in reply, the Court will not consider the issue.

21382896, at *4 (W.D.N.Y. Feb. 13, 2003) (failure to refer plaintiff for recommended surgery). Plaintiff's objection concerns the course of treatment, and that "does not rise to the level of a constitutional violation." *King v. Shinder*, No. 16-CV-6315, 2020 WL 4750294, at *8 (S.D.N.Y. Aug. 17, 2020) (quoting *Doe v. Goord*, No. 04-CV-570, 2006 WL 1041130, at *3 (S.D.N.Y. Apr. 18, 2006)).

Plaintiff fares no better under the *mens rea* or subjective prong of his deliberate indifference claim. To make a showing on the subjective prong, Plaintiff must prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson*, 808 F. App'x at 18 (quoting *Darnell*, 849 F.3d at 35). Plaintiff's submissions reveal just the opposite. According to the medical records Plaintiff submitted, from November 27, 2018 through December 24, 2019, he was examined in connection with his knee by medical professionals no less than fourteen times: four times by the orthopedist, Dr. Semble (January 22, 2019, February 26, 2019, August 6, 2019, and December 24, 2019), four times by Drs. Piacente and Parghi (March 10, 2019, April 4, 2019, June 17, 2019, and August 6, 2019), twice by the physical therapist, Dr. Pereira (March 26, 2019 and October 15, 2019), and four times by staff (November 27, 2018, March 14, 2019, March 18, 2019, and May 17, 2019). (Med. Rec. at 16, 19-23). Over the course of those encounters, medical providers noted that "pain is not the issue" (*id*. at 22), that Plaintiff "state[d] that he is able to walk normally" (*id*. at 21), that the injury did not "impede" his activities of daily living (*id*.), that "[t]here is no complaint of pain as long as he does not do any pivoting or planting activities" (*id*. at 19), that his gait "and weight bearing [were] normal" (*id*.), that brace was effective (*id*. at 16), and that he "plays basketball or runs" (*id*.).

First, assuming that the interactions[13] between Plaintiff and Defendant were sufficient to impugn personal involvement in any deprivation of care, the frequency of these visits, and the care provided as a result, belie a showing under the subjective prong. *See Gee v. New York City Health & Hosps. Corp.*, No. 19-CV-3622, 2020 WL 3618454, at *5 (S.D.N.Y. July 2, 2020) (dismissing Fourteenth Amendment deliberate indifference claim under Rule 12(b)(6) where records plaintiff provided revealed "timely, responsive treatment" with prescriptions for, *inter alia*, physical therapy); *see also Simpson v. Oakes*, 640 F. App'x 86, 88 (2d Cir. 2016) (affirming summary judgment on Eighth Amendment claim where the record reflects "extensive medical care"). Second, the records' contents do not suggest Defendants'—or any professional's—awareness of a serious medical need. *Mena v. City of New York*, No. 13-CV-2792, 2018 WL 4328827, at *7 (E.D.N.Y. Sept. 11, 2018) (granting summary judgment where x-ray "show[ed] no remarkable results" (internal quotation marks omitted)); *see also Abreu v. Farley*, No. 11-CV-6251, 2019 WL 1230778, at *12 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment on Eighth Amendment deliberate indifference for defendants where "medical progress notes wholly undermine[d] Plaintiff's contention that he suffered a sufficiently serious" injury); *Riley v. Roycroft*, No. 16-CV-2227, 2017 WL 782917, at *7 (S.D.N.Y. Feb. 28, 2017) (dismissing Eighth Amendment deliberate indifference claim where medical notes reflected subjective conclusion that, despite plaintiff's requests, a back brace was unnecessary).

Based on the foregoing, Plaintiff's deliberate indifference claim must be dismissed.

---

[13] In addition to the encounter on January 22, 2019, the notes reflect that Defendant told Plaintiff that he would be issued a knee brace (March 14, 2019), and that Defendant provided Plaintiff with that knee brace (March 18, 2019). (Med. Rec. at 21). Defendant also entered a notation that a knee brace was due to be delivered (June 12, 2019), she delivered a new brace to a coworker for delivery to Plaintiff (September 9, 2019), and let doctors use her account to make notes on two occasions (December 7, 2018 and August 6, 2019). (*Id*. at 19-21, 23).

III.     State Law Claims for Relief

Finally, to the extent that any of Plaintiff's allegations might be construed as common law claims under New York law, those claims must be dismissed because he failed to file a notice of claim. In New York, a claim for "damage, injury or death" against a "county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law." N.Y. Cty. Law § 52(1). In order to comply with this provision, those seeking to sue county agents—such as Defendant—must serve a notice of claim "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a). This is a "condition precedent to bringing" the categories of claims identified and "[f]ederal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Villa v. Westchester Cty.*, No. 19-CV-428, 2020 WL 4505968, at *8 (S.D.N.Y. Aug. 5, 2020) (internal quotation marks omitted). Indeed, in order to survive even a motion to dismiss, courts require that plaintiffs plead affirmatively that they complied with notice of claim requirements. *Id.*

Here, Defendant argued that Plaintiff failed to plead this requirement and argues that Plaintiff did not file a notice of claim. (Def. Br. at 9-11). Plaintiff, in opposition, has not claimed to plead the requirement, let alone claim that he actually filed a notice of claim. (*See generally* Pl. Br.). As Plaintiff has not pled that he complied with the notice of claim requirement and he did not oppose Defendant's argument, the Court may deem the point conceded. *See CVS Pharm., Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 383 (S.D.N.Y. 2019). Accordingly, to the extent Plaintiff's

allegations may constitute claims under state law, they are dismissed for failure to file a timely notice of claim.[14]

## CONCLUSION

Based upon the foregoing, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. The action is dismissed as against Defendant Jouliana Petranker. The Clerk of the Court is respectfully directed to terminate the pending motion sequence (Doc. 21) and terminate Defendant Jouliana Petranker from this action. The Court also directs the Clerk of the Court to mail a copy of this Order to Plaintiff.

**SO ORDERED:**

Dated:    New York, New York
          September 23, 2020

_____
PHILIP M. HALPERN
United States District Judge

---

[14] Even if Plaintiff had filed a timely notice of claim, as the claim permitting this Court to exercise jurisdiction over the state law claims has been dismissed, the Court would nevertheless find that "values of judicial economy, convenience, fairness, and comity" require the state law claims' dismissal. *Meagher v. State Univ. Constr. Fund*, No. 17-CV-903, 2020 WL 5504011, at *21 (N.D.N.Y. Sept. 11, 2020) (quoting *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).