UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOS L. DINKINS,

                              Plaintiff,

              -against-

THE STATE OF NEW YORK, et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-08447 (PMH)

PHILIP M. HALPERN, United States District Judge:

Nicos L. Dinkins ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 and New York State law against Town of Ramapo Police Officer Michael Samora ("Defendant") in connection with an arrest effectuated on November 27, 2018. (Doc. 2, "Compl.").[1] Specifically, Plaintiff alleges that Defendant: (1) used excessive force in apprehending him, in violation of the Fourth Amendment; (2) subjected him to an unreasonable search, in violation of the Fourth Amendment; (3) subjected him to "racial profiling" in violation of the Fourteenth Amendment; and (4) harassed him in violation of New York law. (*Id*. at 2).[2]

Pending presently before the Court are two separate motions. The first, filed by Defendant on February 18, 2021, seeks summary judgment and dismissal of all claims against him under Federal Rule of Civil Procedure 56. (Doc. 52; Doc. 53, "Def. Br."). Plaintiff's opposition brief was filed on May 14, 2021 (Doc. 59, "Opp."), and the motion was submitted fully with the filing of

---

[1] All other Defendants, except Jouliana Petranker ("Petranker"), were dismissed or transferred to the U.S. District Court for the District of New Jersey by Judge Seibel on September 23, 2019. (Doc. 6). This Court granted Petranker's motion for summary judgment in a Memorandum Opinion and Order dated September 23, 2020. (Doc. 36). That opinion is available on commercial databases. *See Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554 (S.D.N.Y. Sept. 23, 2020).

[2] Plaintiff used the template complaint available on the Court's website to draft his pleading. Citations to the Complaint and exhibits correspond to the pagination generated by ECF.

Defendant's reply brief on May 21, 2021 (Doc. 60, "Reply"). The second, filed by Petranker, the Rockland County Jail Medical Administrator, Rockland County Sheriff Falco, and Rockland County Executive Ed Day (collectively, "County Defendants") on November 20, 2020, seeks entry of a final judgment under Federal Rule of Civil Procedure 54(b). (Doc. 42; Doc. 43). Plaintiff did not file any opposition to that motion; the Court therefore deems that motion unopposed.

For the reasons set forth below, Defendant's motion is GRANTED and the County Defendants' motion is DENIED as moot.

## BACKGROUND

The facts recited herein are drawn from the Complaint, Defendant's Rule 56.1 Statement of Undisputed Material Facts (Doc. 48, "Def. 56.1 Stmt."), Plaintiff's opposition brief[3] (*see* Opp.), and the Affirmation of Roselina Serrano in Support of Defendant's Motion for Summary Judgment along with the exhibits annexed thereto (Doc. 54, "Serrano Aff."), which include, *inter alia*: (1) excerpts of Defendant's testimony in *People v. Dinkins*, No. 14/2019, in the Rockland County Court, dated August 2, 2019 (Doc. 54-4, "Serrano Ex. D"); (2) a copy of the Rockland County District Attorney's Office Evidence/Property Intake & Disposition Sheet for "P.D./Agency: Case #RP-2922-18" (Doc. 54-6, "Serrano Ex. F"); (3) a copy of the Felony Complaint filed by Defendant in the Ramapo Town Court in *People v. Dinkins*, "Case #: RP-2922-18," dated November 27, 2018 (Doc. 54-7, "Serrano Ex. G"); (4) an excerpt from the New York State Incident Report for Case No. RP-02922-18 prepared by Defendant in connection with Plaintiff's arrest

---

[3] Plaintiff did not submit his own Rule 56.1 Statement or respond to Defendant's 56.1 Statement. "While *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (internal quotation marks omitted). While Plaintiff's opposition brief does not address Defendant's Rule 56.1 Statement, the Court, in its discretion, will consider the opposition brief as opposition to Defendant's Rule 56.1 Statement.

(Doc. 54-8, "Serrano Ex. H"); (5) the Grand Jury Indictment in *People v. Dinkins*, Indictment No. 2019-014, in the Rockland County Court, dated November 27, 2018 (Doc. 54-9, "Serrano Ex. I"); (6) a copy of a printout from the New York State Unified Court System's WebCriminal application for Defendant Nicos L. Dinkins, Case No. 00014-2019, in the Rockland County Court (Doc. 54-10, "Serrano Ex. J"); and (7) a copy of the medical records Plaintiff submitted in support of his cross-motion against Petranker (Doc. 54-11, "Serrano Ex. K;" *see also* Doc. 33 at 15-29). The Court assumes the parties' familiarity with the facts and legal conclusions reached in its September 23, 2020 Memorandum Opinion and Order. (Doc. 36); *see also Dinkins*, 2020 WL 5659554.

A little before noon on November 27, 2018, the residents of 46 Mariner Way in Ramapo, New York, reported a suspicious vehicle parked near their home. (Def. 56.1 Stmt. ¶ 10; Compl. at 7; Serrano Ex. D at 5-6; Serrano Ex. G at 1; Serrano Ex. H at 1; Opp. at 2-3). The vehicle, a black Nissan Altima, contained two men and had been parked on the street for roughly two hours when police were called. (Def. 56.1 Stmt. ¶ 11; Serrano Ex. D at 6-7; Serrano Ex. H at 1). Defendant responded and, upon arrival, parked behind the Altima. (Serrano Ex. H at 1). Defendant saw two men in the car: one in the driver's seat and one in the backseat on the passenger side of the car. (Def. 56.1 Stmt. ¶ 11; Serrano Ex. D at 7; Serrano Ex. G at 1; Serrano Ex. H at 1). Defendant approached the vehicle and asked the driver to identify himself. (Def. 56.1 Stmt. ¶ 12; Serrano Ex. D at 7; Serrano Ex. G at 1; Serrano H at 1). The driver complied, provided his license, identified himself as Jeandany Vilburn, and claimed to be an Uber driver waiting to pick up a passenger he had taken to a doctor's office about one quarter of a mile away. (Def. 56.1 Stmt. ¶¶ 12-13; Serrano Ex. D at 7-8; Serrano Ex. G at 1; Serrano Ex. H at 1). Defendant then asked the man in the backseat, Plaintiff, for identification. (Def. 56.1 Stmt. ¶ 14; Serrano Ex. D at 8-9; Serrano Ex. G at 1; Serrano Ex. H at 1).

At the time of this interaction, Plaintiff—by his own admission—was "on the run" from law enforcement. (Compl. at 8). The precise reason for Plaintiff's belief that he was a fugitive at that time is unclear, but it appears linked to a voluntary parole violation. (*See* Compl. at 7 (admitting that while Plaintiff was "asked to re-report to parole because [his] parole officer . . . forgot to have [him] sign some papers," he "refused" to do so)). The reason for that belief is inconsequential, but its import is significant because it caused Plaintiff to lie to Defendant about two things: (1) that he did not have any identification on his person; and (2) that he was Travis Mann, born on July 31, 1988. (Def. 56.1 Stmt. ¶ 14; Compl. at 8; Serrano Ex. D at 9; Serrano Ex. G at 1; Serrano Ex. H at 1-2). The stories diverge at this juncture.

According to Defendant, after asking Plaintiff and the driver for their names, he returned to his patrol car, ran their names through dispatch, learned that Travis Mann had an outstanding warrant, and called for backup. (Def. 56.1 Stmt. ¶¶ 15-17; Serrano Ex. D at 9-10; Serrano Ex. G at 1; Serrano Ex. H at 2). As Defendant waited for backup, Plaintiff exited the Altima and asked, "What's the problem, officer?" (Def. 56.1 Stmt. ¶ 18; Serrano Ex. D at 10-12; Serrano Ex. G at 1-2; Serrano Ex. H at 2). When Defendant explained that Plaintiff—or, rather, Travis Mann—had an active warrant and would have to come back to the police station, Plaintiff fled on foot and Defendant gave chase. (Def. 56.1 Stmt. ¶¶ 18-20; Serrano Ex. D at 12; Serrano Ex. G at 2; Serrano Ex. H at 2). Defendant, in this version of the story, commanded Plaintiff to stop running multiple times and Plaintiff ignored him. (Serrano Ex. H at 2). Defendant waited until Plaintiff reached a grassy area and discharged his taser once, missing Plaintiff. (Serrano Ex. D at 12-13; Serrano Ex. H at 2). Plaintiff was apprehended after he decided to lay down on a driveway and surrender. (Def. 56.1 Stmt. ¶ 24; Serrano Ex. D at 13; Serrano Ex. H at 2). The pursuit lasted for approximately one minute. (Serrano Ex. D at 13). As Plaintiff got down onto the driveway, Defendant watched

Plaintiff remove a wallet from his pocket and toss it underneath a vehicle parked next to him. (Def. 56.1 Stmt. ¶ 22; Serrano Ex. D at 13; Serrano Ex. G at 2; Serrano Ex. H at 2).

     In Plaintiff's version, after knowingly giving Defendant a false name, Defendant advanced immediately on Plaintiff in a way that made Plaintiff fear "for [his] life" and caused him to flee. (Compl. at 8; *see also* Opp. at 4). Plaintiff insists that Defendant fired his taser at Plaintiff at least twice and, with the second shot, hit his target. (Compl. at 8; Opp. at 4). In this rendition, the taser brings Plaintiff to the ground and ends the pursuit. (Opp. at 4). Plaintiff makes no claim about the length of the pursuit or throwing his wallet. (*See generally* Compl.; Opp.). Plaintiff maintains that, after being handcuffed, Defendant and other unidentified officers beat him "viciously." (Opp. at 9; *see also id*. at 11 ("Plaintiff suffered from an[] intense beat[ing] from . . . Samora and the other officers who joined him."); Compl. at 8 ("I was then attacked after I was handcuffed.")).

     Regardless of how the incident unfolded, Defendant recovered from the wallet Plaintiff discarded (along with a valid New York State driver's license with Plaintiff's name and picture) the following false documents: (1) a forged New York State driver's license with Plaintiff's picture in the name of William Cooper; and (2) three fake credit cards issued to William Cooper. (Def. 56.1 Stmt. ¶ 23; Serrano Ex. D at 15-16; Serrano Ex. F; Serrano Ex. G at 2; Serrano Ex. H as 2). A grand jury on this evidence indicted—and a trial jury convicted—Plaintiff of four counts (*i.e.*, one for each fake document) of Criminal Possession of a Forged Instrument in the Second Degree in violation of N.Y. Penal Law § 170.25. (Def. 56.1 Stmt. ¶¶ 25-29; Serrano Ex. I; Serrano Ex. J). The conviction has not been reversed, expunged, declared invalid, or otherwise been disturbed. (Def. 56.1 Stmt. ¶ 31; Opp. at 1 (admitting that Plaintiff is awaiting sentencing on "all four counts")).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come

forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at \*2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at \*9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at \*5 (S.D.N.Y. Sept. 8, 2020). This status,

however, does not excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017) (explaining that, even for a *pro se* party, "mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment").

## ANALYSIS

I.  The Federal Claims for Relief Under 42 U.S.C. § 1983

As mentioned previously, Plaintiff's federal claims proceed under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff alleged here that Defendant violated his Fourth and Fourteenth Amendment rights, but Defendant insists that summary judgment is proper at this juncture because there are no genuine issues of material fact and, quite simply, Plaintiff has no viable claims.

The Court considers Defendant's arguments *seriatim*.

A.  <u>Failure to Establish an Unreasonable Search in Violation of the Fourth Amendment</u>

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. This language, "incorporated against the states by the Fourteenth Amendment, guarantees all individuals the right to be free from unreasonable search and seizure." *Corley v. Vance*, 365 F. Supp. 3d 407, 443 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). "Consequently, as to warrantless searches, it has been the law for more than a half century that: 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Jenkins v. Cty. of Nassau*, No. 19-CV-00557, 2021 WL 1997182, at *6 (E.D.N.Y. May 18, 2021) (quoting *United States v. Weaver*, 975 F.3d 94, 99 (2d Cir. 2020)). "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020).

The Court in this case need not and does not reach the merits of Plaintiff's claim for an unreasonable search against Defendant because the claim is barred by operation of *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Supreme Court held that:

> in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must

> consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it
> would, the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already been
> invalidated. But if the district court determines that the plaintiff's
> action, even if successful, will *not* demonstrate the invalidity of any
> outstanding criminal judgment against the plaintiff, the action
> should be allowed to proceed, in the absence of some other bar . . . .

*Id*. at 486-87 (emphasis in original). This principle—known as the "*Heck* Doctrine"—applies

"only when 'establishing the basis for [a prisoner's § 1983] claim *necessarily demonstrates* the

invalidity of the conviction.'" *McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) (quoting *Heck*,

512 U.S. at 481-82 (alteration and emphasis in original)).[4] Bearing this in mind, "[d]istrict courts

have frequently found that Section 1983 actions targeting a single episode involving a single

search[] necessarily demonstrate the invalidity of a conviction based on that search." *Monroe v.

Gould*, 372 F. Supp. 3d 197, 202-03 (S.D.N.Y. 2019) (internal quotation marks omitted). The facts

before the Court present just such a scenario.

The following facts are undisputed: (1) Plaintiff discarded the wallet; (2) Defendant

recovered the wallet; (3) Defendant discovered four fake documents—one fake New York State

driver's license and three fake credits cards—inside the wallet; (4) each fake document resulted in

---

[4] The Court notes that "a federal court's finding of a Fourth Amendment violation would not necessarily imply that a prior state conviction was unlawful if, despite the constitutional violation, the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error." *Williams v. Ontario Cty. Sheriff's Dep't*, 662 F. Supp. 2d 321, 329 (W.D.N.Y. 2009). Although Defendant has not raised the issue, the Court is skeptical as to whether a search cognizable under the Fourth Amendment even occurred on these facts. Indeed, it appears that Plaintiff abandoned the wallet when he threw it underneath the parked vehicle, thereby extinguishing any legitimate expectation of privacy he had in the wallet or its contents. *See United States v. Levasseur*, 816 F.2d 37, 44 (2d Cir. 1987) (explaining that "one forfeits any reasonable expectation of privacy upon abandoning one's property"); *United States v. Robinson*, No. 16-CR-00545, 2019 WL 1211431, at *12 (E.D.N.Y. Feb. 27, 2019) ("[I]t is well settled that 'seizure of abandoned property does not violate the Fourth Amendment.'" (quoting *United States v. Springer*, 946 F.2d 1012, 1017 (2d Cir. 1991)), *adopted by* 2019 WL 1206723 (E.D.N.Y. Mar. 14, 2019); *Taylor v. Connelly*, 18 F. Supp. 3d 242, 255 (E.D.N.Y. 2014) ("The evidence indicated that the Petitioner abandoned the sock of cocaine when he threw it into the hedges. In doing so, the Petitioner immediately forfeited any privacy right he had in the sock.").

its own count for Criminal Possession of a Forged Instrument in the Second Degree, a felony, in violation of N.Y. Penal Law § 170.25; (5) Plaintiff was convicted on each count; and (6) the convictions have not been disturbed. (*See* Def. 56.1 Stmt. ¶¶ 22-29, 31; Serrano Ex. D at 13, 15-16; Serrano Ex. F; Serrano Ex. G at 2; Serrano Ex. H; Serrano Ex. I; Serrano Ex. J; Opp. at 1). Allowing this claim to proceed would present the very situation to which the *Heck* Doctrine was intended to apply. *See, e.g.*, *Paulin v. Town of New Windsor*, No. 18-CV-06182, 2020 WL 5898958, at *7-8 (S.D.N.Y. Oct. 5, 2020); *Monroe*, 372 F. Supp. 3d at 202-03; *El v. City of New York*, No. 14-CV-09055, 2015 WL 1873099, at *3-5 (S.D.N.Y. Apr. 23, 2015). The abandoned wallet and its contents, on these facts, simply cannot be the basis for a claim for relief under 42 U.S.C. § 1983.

Consequently, because allowing Plaintiff's claim for unreasonable search against Defendant to proceed would necessarily imply the invalidity of his conviction in violation of the *Heck* Doctrine, Defendant is granted summary judgment on this claim for relief.

B. Failure to Establish Use of Excessive Force in Violation of the Fourth Amendment

Plaintiff's second claim for relief against Defendant, excessive force, is also analyzed under the reasonableness standard of the Fourth Amendment. *See Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019); *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015); *McDonald v. City of Troy*, No. 18-CV-01327, 2021 WL 2232565, at *4 (N.D.N.Y. June 3, 2021) (explaining that "[t]he Fourth Amendment protects a free citizen from excessive force in the course of an arrest"). "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Conor*, 490 U.S. 386, 397 (1989)).

11

Analyzing whether a particular use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Calixto v. City of New York*, 778 F. App'x 59, 59-60 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

Generally, when assessing whether a particular use of force was reasonable, "courts must look to the totality of the circumstances relating to the conduct of law enforcement officers, including the manner in which the plaintiff's alleged injuries were inflicted during the arrest." *Kayo v. Mertz*, No. 19-CV-00365, 2021 WL 1226869, at *14 (S.D.N.Y. Mar. 31, 2021) (internal quotation marks omitted); *see also Gutierrez v. New York*, No. 18-CV-03621, 2021 WL 681238, at *14 (E.D.N.Y. Feb. 22, 2021) (noting that evaluating the use of force "is fact-specific and requires balancing of various factors"). This evaluation is "guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "That multi-factor test is not meant to be applied rigidly, however, and the inquiry into whether force is reasonable requires an objective examination of the totality of the circumstances." *Gersbacher v. City of New York*, No. 14-CV-07600, 2017 WL 4402538, at *9 (S.D.N.Y. Oct. 2, 2017) (internal quotation marks omitted).

There are three different applications of force that Plaintiff contends were excessive in this case: (1) use of a taser; (2) use of handcuffs; and (3) being beaten after being handcuffed. (*See* Compl. at 8; Opp. at 4, 8-12). The Court considers each use of force separately.

       i.  <u>First Use of Force: Taser</u>

The parties disagree about what transpired with respect to the taser. Plaintiff claims that Defendant fired at least twice, struck Plaintiff with the second shot, and brought Plaintiff to the ground. (Compl. at 8; Opp. at 4). Defendant says that he fired once, missed, and Plaintiff surrendered. (Def. 56.1 Stmt. ¶¶ 20-21, 24; Serrano Ex. D at 12-13; Serrano Ex. H at 2). Even if Plaintiff's story is true, Defendant's motion must be granted on this theory.

"[U]se of a taser . . . constitutes significant force," *Jones v. Treubig*, 963 F.3d 214, 226 (2d Cir. 2020), but the totality of the circumstances—with reference to the three factors—leads this Court to conclude that no reasonable factfinder could find that use of the taser was objectively unreasonable here. First, when Defendant fired, he believed Plaintiff was Travis Mann—a person with an outstanding warrant for Harassment in the Second Degree, a violation.[5] (Serrano Ex. H at 2 (noting "an active warrant for harassment 2")); N.Y. Penal Law § 240.26. Second, there is no evidence that Defendant knew Plaintiff posed a threat, but he believed that Plaintiff was a wanted man. (*See* Serrano Ex. D at 2). Third, Plaintiff admits that he fled. (*See* Opp. at 4). Considering

---

[5] While Plaintiff maintains that Defendant advanced as soon as Plaintiff uttered the false name, he does not dispute that Defendant believed he was Travis Mann during the pursuit and that, at that time, Defendant knew of an outstanding warrant for Travis Mann. (*See generally* Opp.). Rather, conceding tacitly that a warrant existed, Plaintiff argues that Defendant lacked probable cause to arrest because he did not know who Plaintiff was before the arrest. (Opp. at 10). The existence of probable cause has no bearing on the Court's analysis.

also that Plaintiff had been sitting in a parked car for roughly two hours and tried to avoid identifying himself (Serrano Ex. D at 6; Opp. at 4), use of the taser was objectively reasonable.[6]

Further supporting the Court's conclusion that summary judgment is proper as to this theory, during the pursuit, Defendant "advised . . . [Plaintiff] multiple times to stop running or I will Taser him." (Serrano Ex. H at 2). While Plaintiff claims nobody ever said he was under arrest, he does not dispute that Defendant issued these warnings. (*See generally* Opp.). Currently, the Second Circuit's "precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are . . . resisting arrest." *Penree ex rel. Penree v. City of Utica, New York*, 694 F. App'x 30, 33 (2d Cir. 2017) (citing *MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 7-8 (2d Cir. 2013); *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595-96 (2d Cir. 2014) (emphasis in original)); *see also Wehling v. Vill. of Medina*, No. 16-CV-00746, 2020 WL 5633631, at *9 (W.D.N.Y. Jan. 28, 2020) ("[R]elevant case law generally suggests . . . it is reasonable to tase a fleeing or unruly suspect who has not yet been handcuffed or otherwise secured" (quoting *Lee v. City of Utica, New York*, No. 10-CV-01446, 2013 WL 12140336, at *4 (N.D.N.Y. Mar. 5, 2013) (emphasis omitted)), *adopted by* 2020 WL 5628990 (W.D.N.Y. Sept. 21, 2020).

Aside from the fact that Plaintiff's story cannot withstand the extant motion, the medical records from the day of the incident belie any claim of being tased. "[S]ummary judgment is proper 'where undisputed medical records *directly and irrefutably* contradict a plaintiff's descriptions of

---

[6] Plaintiff argues in his unsworn opposition that he was free to leave because Defendant never actually said Plaintiff was under arrest. (*See* Opp. at 8, 10). The Court rejects this argument. In either version of events, Defendant clearly intended to detain Plaintiff. *See, e.g.*, *Wierzbic v. Howard*, 331 F.R.D. 32, 55 (W.D.N.Y. 2019) (explaining that "[c]ircumstances that might indicate a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone indicating that compliance with the officer's request might be compelled" (internal quotation marks omitted)), *aff'd*, 836 F. App'x 31 (2d Cir. 2020). Plaintiff's own story belies any claim that he was unaware he was not free to leave. (*See* Compl. at 8 (claiming that Plaintiff "ran for [his] life" after Defendant advanced on him)).

his injuries, [because] no reasonable jury could credit plaintiff's account of the happening.'" *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 641 (S.D.N.Y. 2020) (quoting *Henry v. Pierce*, No. 11-CV-00845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017) (second alteration and emphasis in original)). The medical records reveal that Plaintiff complained of knee pain, wrist soreness, an abrasion on his left wrist, and a toothache—but there is no notation that he was, or complained about being, injured as a result of being tased.[7] (*See* Serrano Ex. K at 8-14).

Defendant's motion is, accordingly, granted as to this theory of excessive force.

ii.   Second Use of Force: Handcuffs

Plaintiff's medical records indicate that he complained of "soreness of his wrists from the handcuffs." (Serrano Ex. K at 10). The medical records note also that Plaintiff had "left wrist pain skin abrasion noted left wrist . . . ." (*Id*. at 9). Although there is no evidence linking the abrasion to the handcuffs, Plaintiff offers the self-serving claim that the handcuffs were "sharp" and caused "removal of . . . skin . . . and . . . an abrasion." (Opp. at 11). It is not clear that Defendant was the one who placed the handcuffs on Plaintiff (Serrano Ex. H at 2 (noting that Plaintiff "placed his hands behind his back, where myself and PO Milovich was able to get him into custody")), but that point is not disputed by Defendant (*see generally* Def. Br.; Reply).

Because this theory of excessive force involves handcuffs, the totality of the circumstances test used above does not apply; rather, in this scenario, the Court evaluates three specific factors. Those factors are "whether (1) the . . . handcuffs were unreasonably tight; (2) the defendant[] ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the . . . wrists." *Crocker v. Rumenapp*, No. 21-CV-00266, 2021 WL 2652546, at *3 (N.D.N.Y. Apr. 19, 2021) (internal quotation marks omitted), *adopted by* 2021 WL 2651940 (N.D.N.Y. June 25,

---

[7] The significance of the medical records is enhanced by the fact that, as noted above, it was *Plaintiff* who produced these documents for the truth of their contents. (*See* Serrano Ex. K; Doc. 33 at 15-29).

2021). "The injury requirement is particularly important. In fact, [t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Rolkiewicz*, 442 F. Supp. 3d at 638 (alteration in original, internal quotation marks omitted); *see also Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 74 (E.D.N.Y. 2015) (recognizing that the injury consideration "is particularly important, because in order to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out" (internal citations and quotation marks omitted)). In order to be actionable, the injuries must be more than *de minimis* which, "for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Morgan v. City of New York*, No. 17-CV-06454, 2021 WL 2207002, at *5 (E.D.N.Y. Mar. 25, 2021) (internal quotation marks omitted). "The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." *Selvaggio*, 93 F. Supp. 3d at 74 (internal quotation marks omitted).

There is no genuine dispute of material fact regarding the use of handcuffs that would defeat Defendant's motion for summary judgment, and the three-factor test bears out that conclusion. First, Plaintiff offers no evidence or information as to whether the handcuffs were "tight" in any way. (*See generally* Opp.). Second, Plaintiff does not claim that he complained that the handcuffs were too tight or that Defendant even knew that they were tight, let alone causing injury of any kind. (*See generally* Compl.; Opp.). Third, the injuries—according to the record—

were an abrasion and soreness.[8] (Serrano Ex. K at 9-10). These injuries simply cannot and do not support a claim for excessive force in the use of handcuffs. *See, e.g.*, *Liverpool v. Cleveland*, No. 17-CV-01995, 2019 WL 4752072, at *6 (E.D.N.Y. Sept. 30, 2019) (granting summary judgment on handcuff excessive force claim where the plaintiff's "pain went away after a few days, and . . . he had no lasting injuries"), *aff'd*, 848 F. App'x 468 (2d Cir. 2021); *McKenzie v. City of New York*, No. 17-CV-04899, 2019 WL 3288267, at *11 (S.D.N.Y. July 22, 2019) (granting summary judgment on handcuff excessive force claim where plaintiff had only "scratches").

The claim for excessive force concerning the use of handcuffs is, accordingly, dismissed.

### iii.   Third Use of Force: Beaten After Being Handcuffed

There remains one theory of excessive force to address: Plaintiff's claim that he was beaten after being handcuffed. (*See* Compl. at 8; Opp. at 2, 4, 9, 11). On this score, "[u]nnecessary blows inflicted while an arrestee is in handcuffs may be sufficient to sustain an excessive force claim." *McClendon v. Cty. of Nassau*, No. 11-CV-00190, 2012 WL 4849144, at *9 (E.D.N.Y. Oct. 11, 2012). Plaintiff alleged in the Complaint, "[a]fter the taser put me down I was then attacked after I was handcuffed." (Compl. at 8). Plaintiff avers in his opposition brief, generally, that Defendant and other "unknown officers . . . abused the Plaintiff by kneeing him and delivering other severe blows causing serious damage to the Plaintiff's left knee and left hand." (Opp. at 4; *see also id*. at 2, 9, 11). This use of force theory suffers from two fundamental shortcomings.

First, Plaintiff offers absolutely no information or evidence about what, specifically, Defendant did to inflict injury when he "beat" Plaintiff. Such conclusory statements cannot defeat

---

[8] Plaintiff suggests that the handcuffs caused "removal of . . . skin . . . ." (Opp. at 11). This is contradicted by the medical records which observe abrasion but also, "B/L wrists: no deformities. No erythema, edema or ecchymosis. Handcuffs in place." (Serrano Ex. K at 9, 12). Plaintiff's unsworn suggestion once again contradicts the medical records, providing another, alternate basis upon which to grant summary judgment. *See Rolkiewicz*, 442 F. Supp. 3d at 641.

the motion. *See Sammarco v. Hoolan*, No. 12-CV-07857, 2014 WL 3639161, at *2 (S.D.N.Y. July 23, 2014) ("Reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment." (quoting *Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001)); *see also Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003) (granting summary judgment on an excessive force claim and explaining that the plaintiff "must offer *some* competent evidence that he was attacked by the officers" (emphasis in original)), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).

Second, even if Plaintiff offered something more than vague, conclusory statements, the medical records reveal that Plaintiff's only complaints following his arrest were about knee pain, wrist pain, and a toothache. (*See* Serrano Ex. K at 8-14). There is no suggestion that the toothache was caused by Defendant or that Plaintiff received any treatment as to his wrist, and as to his knee, Plaintiff was diagnosed with a "strain" and prescribed "motrin." (*Id*. at 12).[9]  These issues are a far cry from injuries one would anticipate from the mercilessly "vicious" and "intense" beating to which Plaintiff alludes generally in his opposition brief. (*See* Opp. at 9, 11). This contradiction between Plaintiff's conclusory allegations and his medical records provides a separate, independent basis to grant Defendant's motion. *See Rolkiewicz*, 442 F. Supp. 3d at 641.

In light of the foregoing, Plaintiff's claim for excessive force based on the theory of an unspecified "beating" after being handcuffed must also be dismissed. As every theory of excessive

---

[9] Plaintiff complained about his knee while incarcerated. Plaintiff's medical history is recounted in the Court's September 23, 2020 Memorandum Opinion and Order. *See Dinkins*, 2020 WL 5659554, at *2-4.

force has been dismissed, Defendant is, accordingly, granted summary judgment on this claim for relief in its entirety.[10]

      C.  <u>Failure to Establish "Racial Profiling" in Violation of the Fourteenth Amendment</u>

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This provision is essentially a direction that all persons similarly situated should be treated alike," *Santucci*, 2021 WL 76337, at *4 (internal quotation marks omitted), and "prohibits intentional discrimination on the basis of race, but not government action that merely has a disproportionate impact," *Floyd v. City of New York*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013). A claim for "racial profiling," as Plaintiff presses here, is evaluated under the Equal Protection Clause of the Fourteenth Amendment. *See Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 41 (N.D.N.Y. 2020) (observing that "most courts in this Circuit to consider racial profiling claims under § 1983 have construed them as a subspecies of equal protection claim"). There are three ways to establish intentional racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause:

> *First*, [a] plaintiff could point to a law or policy that expressly classifies persons on the basis of race. *Second*, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. *Third*, [a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

---

[10] The Court notes that Plaintiff made a generic demand for damages in connection with the "[m]ental anguish" he suffered as a result of the facts underlying this case. (Compl. at 5). To the extent this vague, generalized reference to emotional damages may be connected to the excessive force claim, Plaintiff has not provided any showing to substantiate such damages at this juncture. *See generally Guerrero v. City of New York*, No. 12-CV-02916, 2013 WL 673872, at *5 (S.D.N.Y. Feb. 25, 2013) (finding insufficient plaintiff's generalized claims of emotional damages "unaccompanied by allegations of a specific or identifiable mental injury").

*Floyd*, 959 F. Supp. 2d at 570-71 (alterations and emphasis in original, internal quotation marks omitted); *see also Williams v. Toto*, No. 20-CV-04593, 2021 WL 2351176, at *11 (E.D.N.Y. June 9, 2021) (same).

Upon review of the submissions, Plaintiff offers nothing more than bald assertions that his arrest and prosecution were the product of racial discrimination. (Opp. at 12-14). Such conclusory, speculative, baseless, and unsubstantiated statements are insufficient to defeat Defendant's motion for summary judgment. *See, e.g.*, *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[C]onclusory allegations . . . are not evidence and cannot by themselves create a genuine issue of fact where none would otherwise exist." (alteration in original, internal quotation marks omitted)); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (observing that "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"); *Miller v. Terrillion*, 391 F. Supp. 3d 217, 226 (E.D.N.Y. 2019) (granting motion for summary judgment where plaintiff failed to support his "conclusory allegation of racial profiling").

Defendant's motion for summary judgment is, consequently, granted as to Plaintiff's claim that he was the victim of "racial profiling" in violation of the Fourteenth Amendment.

II.   The New York State Law Claim

The sole remaining claim for relief is Plaintiff's claim against Defendant for harassment under New York State law. (*See* Compl. at 2). Defendant argues that this claim for relief must be dismissed because Plaintiff failed to serve a notice of claim in compliance with applicable law. (Def. Br. at 14-15). The entirety of Plaintiff's opposition on this point is as follows: "The Plaintiff disputes that he did file a notice of claim in the month of February 2019. Copies of that claim will

be turned over to the courts at this time." (Opp. at 14). Notably, Plaintiff has failed to produce any evidence showing that he did, in fact, comply with the applicable notice of claim requirement.[11]

Notwithstanding the foregoing and, even assuming that Plaintiff did, in fact, serve a notice of claim in compliance with state law, this claim for relief is dismissed because, quite simply, there is no such thing as an independent tort for harassment under New York State law. *See Beauty Beauty USA, Inc. v. Chin Hon Luo*, No. 11-CV-05349, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011) ("If there is a tort of harassment in New York, its existence has escaped the Court's attention over the past several decades."); *Bouchard v. New York Archdiocese*, No. 04-CV-09978, 2006 WL 1375232, at *4 n.4 (S.D.N.Y. May 18, 2006) (holding that "to the extent Plaintiff is attempting to assert a claim for common-law harassment, no such claim can be maintained, as '[t]here is no cognizable common-law claim for malicious harassment' in New York" (quoting *Gentile v. Allstate Ins. Co.*, 732 N.Y.S.2d 353 (App. Div. 2001) (alteration in original)).

Plaintiff's claim for harassment under New York State law is, therefore, dismissed.

III.   <u>Relief under Federal Rule of Civil Procedure 54(b)</u>

As all the County Defendants were all dismissed from this action as of September 23, 2020, those defendants asked the Court to enter a final judgment as to them under Federal Rule of Civil Procedure 54(b). Under that provision, when a case involves multiple parties:

> the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

[11] Although Defendant was employed by the Town of Ramapo at the time of the incident, he relies on N.Y. Gen. Mun. Law § 50-k(6)—a provision inapplicable to the Town of Ramapo, as it concerns suits against employees of New York City—instead of N.Y. Town Law § 67 in making his argument. (Def. Br. at 14).

Fed. R. Civ. P. 54(b). In light of the conclusions reached herein—specifically, that Defendant is granted summary judgment as to all claims against him—this action will, in the normal course, be dismissed in its entirety, and a judgment will be entered as to all parties. The County Defendants' motion is, therefore, denied as moot.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and the County Defendants' motion for entry of a final judgment under Federal Rule of Civil Procedure 54(b) is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 42 and Doc. 52, mail a copy of this Memorandum Opinion and Order to Plaintiff, enter a final judgment in favor of all Defendants, and close this case.[12]

**SO ORDERED:**

Dated:   White Plains, New York
         July 26, 2021

PHILIP M. HALPERN
United States District Judge

---

[12] Given the conclusions reached herein, the Court need not and does not reach Defendant's argument as to qualified immunity.